UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IAN CALLAHAN,

     Petitioner,

v.                              Case No. 4:21cv450-AW-HTC

FLORIDA DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

Petitioner Ian Callahan filed a petition under 28 U.S.C. § 2254, challenging his conviction and sentence in the circuit court of Leon County, Florida, in case no. 2014 CF 619. Docs. 1 & 8. After considering the petition, the supporting memorandum, the record, the Secretary's response, Doc. 17, and Petitioner's reply, Doc. 19, the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    Offense and Conviction[1]

At the time of the offense, Petitioner lived in the same apartment complex as Richard K. Onkey and Christopher Turknett. Onkey and Turknett were roommates

---

[1] The summary below is derived from the trial transcript, Docs. 17-4 and 17-5.

who lived on the first floor below the apartment in which Petitioner and his girlfriend lived.  Doc. 17-4 at 34.  For about a month or so before March 2, 2014, Petitioner would "pretty regularly" come to Onkey and Turknett's apartment and hang out in a friendly manner, listening to and composing music with the two of them.  *Id.* at 60.  However, the roommates had "a falling out with" Petitioner,[2] which, as discussed below, led to Petitioner's arrest.  *Id.*

At approximately 1:25 a.m. on March 2, 2014, Turknett was awakened repeatedly by text messages and phone calls from a number he did not know.  *Id.* at 35.  Then, while he and Onkey were watching TV, they heard a sound like high pressure air being released outside their apartment.  Turknett went to look and recognized Petitioner, "over by [Onkey]'s car popping a tire" with a knife in his hand.  *Id.*  Turknett went out the door and asked Petitioner what he was doing, and Petitioner began walking away, towards a fence at the edge of the parking lot.  *Id.*  Turknett followed him for "about 60 steps" before returning to the apartment.  *Id.* at 36.

At the apartment, Turknett called the police who stated they were sending an officer, but then they got disconnected.  Moments later, Turknett got a call from a number Turknett did not know.  *Id.* at 38. Turknett answered and realized it was

---

[2] During a sidebar discussion, the attorneys agreed that the exact nature of the "falling out" would not be presented to the jury because it involved a prior criminal charge against Petitioner.  *Id.* at 61-62.

Petitioner, so Onkey and Turknett put it on speakerphone and began videorecording the call, which video was played for the jury. *Id.* In the video, Petitioner at first pretended to be a material witness for Petitioner, not himself. *Id.* at 43. After Turknett convinced Petitioner that they knew it was actually him, they convinced him to come onto the attached porch outside their back sliding glass door. *Id.* at 44-45. Turknett testified that he wanted Petitioner to come over because he "was trying to keep him there for the police to be able to catch him." *Id.* at 66.

Onkey saw Petitioner, across the parking lot, leap off a wall he was standing on onto the hood of a car, damaging it. *Id.* at 76-77. Petitioner then walked over to them while Onkey was leaning up against the doorjamb of the sliding glass door that led from the interior of the apartment to the concrete slab porch outside it and Turknett was standing on the porch. *Id.* at 45 & 77; *see also* Doc. 17-6 at 12 (picture of porch). When he got to the edge of the porch, Petitioner threatened to stab either of them in the throat with a five-and-a-half-inch knife if they came off the porch, but Onkey told him they were not planning to do that. *Id.* at 78. He then called Onkey and Turknett some "very explicit names" while "stepping all the way up to [Onkey] and had put his finger in [Onkey's] face." *Id.* Onkey then told Petitioner, "Just take a walk, man"; Petitioner responded, "No. I'm not going to take a walk." *Id.* at 46 (from video played for jury). Petitioner then slapped Onkey, the two of them fought in the doorway, *id.* at 79, until Petitioner turned on Turknett and they fought. Onkey then broke up that fight, and together the roommates subdued Petitioner until the

police arrived. *Id.* at 79-80.

Officers Bowling and Bailey were the first two officers to respond, and Onkey and Turknett warned them that Petitioner had hepatitis. *Id.* at 114. When Bowling attempted to get Petitioner into the ambulance, Petitioner resisted, attempted to kick Bowling and succeeded in spitting blood and saliva into Bowling's face. *Id.* at 115. Also, while Officer Bailey was attempting to subdue Petitioner, he resisted and kicked her in the chest. *Id.* at 115-16. While at the hospital, he continued to resist, including kicking Officer Bailey in the chest a second time, *id.* at 125, so Officer Kutchera was called out to the hospital to assist with the "combative patient." *Id.* at 141-42. Petitioner then spit blood and saliva on Officer Kutchera while continuing to resist. *Id.* at 143.

Petitioner was charged with two counts (I and II) of burglary with an assault and battery (one for each roommate); four counts (III, IV, V and X) of criminal mischief;[3] one count (VI) of resisting arrest with violence; and three counts (VII, VIII and IX) of battery on law enforcement officers (for the batteries on Officers Bowling, Bailey and Kutchera). Doc. 17-2 at 15-16. After a jury trial, he was convicted on all counts. *Id.* at 47. On September 3, 2014, Petitioner was sentenced as a prison releasee reoffender ("PRR") on Counts I, II, and VI. Doc. 17-2 at 66.

---

[3] In the Amended Information, the criminal mischief counts all alleged over $200 damages, but at the end of its case, the State amended Count V to exclude a specific damage amount because no evidence had been admitted concerning the amount. Doc. 17-5 at 4.

As to Counts I and II, Petitioner was sentenced to life imprisonment; as to Counts III, IV, and X, Petitioner was sentenced to 186 days, with credit for all 186 days for time served; as to Count V, Petitioner was sentenced to 60 days, with credit for all of that for time served; as to the remaining Counts VI through IX, Petitioner was sentenced to 5 years' imprisonment. *Id.* at 60-69. Sentences on all the Counts ran concurrently. *Id.* at 69.

### B.     Postconviction History and Timeliness

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one year of certain trigger dates – the pertinent one here being one year from final judgment. 28 U.S.C. § 2244(d)(1)(A). Properly filed post-conviction motions, such as a motion under Florida Rule of Criminal Procedure 3.850, will toll the limitations period until the motion is fully resolved. *Id.* at § 2244(d)(2). The Court has reviewed the record and agrees with the Secretary that, at the time the petition was filed, only 355 days of untolled time had elapsed on the AEDPA clock. Thus, the petition is timely filed.

## II.   LEGAL STANDARDS

### A.     The AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014). "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id.* A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of Petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406

(2000)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Four of Petitioner's grounds for relief are premised on ineffective assistance of trial counsel ("IATC").  An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.  *Id.* at 689.  The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.  *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d

1401, 1406-07 (11th Cir. 1987).

Finally, because the First District Court affirmed the lower court's denial of relief *per curiam* without a written opinion, in determining whether to grant habeas release as to the grounds asserted, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale, presume that the unexplained decision adopted the same reasoning and apply the AEDPA deference to that decision. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## III. DISCUSSION

### A. Ground One: Trial Court Error in Sentencing Petitioner to a Mandatory Term of Life Imprisonment under the PRR, Section 775.082, Florida Statutes

In Ground One, Petitioner argues the trial court erred in sentencing him to a mandatory term of life under Florida's PRR statute, Florida Statute 775.082,[4]

---

[4]   Section 775.082(9)(a)1., Florida Statutes, provides that a "prison releasee reoffender" is a defendant who commits, among other crimes, burglary "within 3 years after being released from [prison] … following incarceration for an offense for which the sentence is punishable by more than 1 year in this state."

Section 775.082(9)(a)3 provides:

> 3. If the state attorney determines that a defendant is a prison releasee reoffender as defined in subparagraph 1., the state attorney may seek to have the court sentence the defendant as a prison releasee reoffender. Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced as follows:
>     a. For a felony punishable by life, by a term of imprisonment for life;
>     b. For a felony of the first degree, by a term of imprisonment of 30 years;
>     c. For a felony of the second degree, by a term of imprisonment of 15 years; and
>     d. For a felony of the third degree, by a term of imprisonment of 5 years.

because (1) the temporal relationship between the current offense and Petitioner's prior release from prison was determined by the judge rather than the jury; (2) the lack of "extenuating circumstances" in subsection (9)(d)1[5] was determined by the prosecutor rather than the jury; and (3) PRR qualification was established by a preponderance of the evidence rather than beyond a reasonable doubt. Doc. 1 at 6. Petitioner argues his sentencing under the PRR violates Supreme Court precedent as set forth in *Apprendi* and *Alleyne*.

Petitioner exhausted this claim by raising it in his first Rule 3.800 motion, Doc. 17-8 at 7, and appealing the denial thereof as Issue V in his appellate brief. Doc. 17-9 at 4 & 57. In the circuit court's Order on Motion to Correct Sentencing Errors, the court held that *Alleyne v. US.*, 570 U.S. 99 (2013) does not require a jury to make the PRR factual determination. Doc. 17-8 at 14. In denying relief, the state court cited *Williams v. State*, 143 So.3d 423, 424 (Fla. 1st DCA 2014). Doc. 17-8 at 14. In *Williams*, the First DCA held that "[t]he key fact pertinent to PRR sentencing—whether the defendant committed the charged offense within three years of release from prison—is not an ingredient of the charged offense. Rather, it relates to the fact of a prior conviction." *Williams*, 143 So. 3d at 424 (citing *Lopez*

---

[5] Section 775.082(9)(d)1 provides: It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless the state attorney determines that extenuating circumstances exist which preclude the just prosecution of the offender, including whether the victim recommends that the offender not be sentenced as provided in this subsection.

*v. State*, 135 So. 3d 539 (Fla. 2d DCA 2014)).  Thus, in *Williams*, the district court

held that *Alleyne* does not require a jury to make the PRR factual determination."

*Id.*  Neither the circuit court's denial of relief nor its reliance on *Williams* was

contrary to or an unreasonable application of clearly established federal law.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that

"*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a

crime beyond the prescribed statutory maximum must be submitted to the jury and

proved beyond a reasonable doubt."  530 U.S. at 489 (emphasis added).  In *Alleyne*,

the Supreme Court extended the *Apprendi* rationale, holding that "any fact that

increases the mandatory minimum is an 'element' that must be submitted to the

jury."  *Alleyne,* 570 U.S. at 103.  The Supreme Court expressly acknowledged in

*Alleyne*, however, that it was not revisiting the narrow exception set forth in

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which held that for

sentencing enhancement purposes, a defendant's prior conviction did not need to be

alleged in the indictment or submitted to the jury and proved beyond a reasonable

doubt.  *Alleyne*, 570 U.S. at 111 n.1.

"The court's decision in *Alleyne* did not change the standard of proof required

for a PRR designation."  *Jossey v. Sec'y, Fla. Dep't of Corr.*, 2020 WL 2512819, at

*6 (M.D. Fla. May 15, 2020) (citing *Chester v. Warden*, 552 Fed.Appx. 887, 2014

WL 104150, at *4 (11th Cir. Jan. 13, 2014) (reiterating that "recidivism is *not* an

element of an offense that must be proved to a jury beyond a reasonable doubt")).

Therefore, the trial court did not violate either *Apprendi* or *Alleyne* when it sentenced Petitioner under the PRR provision. *See Chapman v. Sec'y, Fla. Dep't of Corr.*, No. 1:17-CV-179-TKW-GRJ, 2020 WL 6747390, at *10 (N.D. Fla. Aug. 4, 2020) (the court's "implicit conclusion that the *Apprendi* prior-conviction exception applies to the date of a defendant's release from custody on a prior conviction is 'fairly debatable' among reasonable jurists and, consequently, it is not 'objectively unreasonable'"), *report and recommendation adopted*, No. 1:17CV179-TKW-GRJ, 2020 WL 6746619 (N.D. Fla. Nov. 17, 2020).

Indeed, the federal cases which have addressed this issue, including cases from this District, have relied upon *Williams* in denying habeas relief based on a similar argument as the one posited by Petitioner. *See Hackley v. Inch*, No. 4:17-cv-435-WS/CAS, 2019 WL 1548583, at *15 (N.D. Fla. Jan. 28, 2019) (fact of release from custody is subsumed within the prior conviction exception in *Apprendi*), *report and recommendation adopted by* 2019 WL 1548575 (N.D. Fla. April 9, 2019) (unpublished); *Jossey v. Sec'y, Dep't of Corr.*, No. 3:18-cv-464-J-39-JBT 2020 WL 2512819 *8 (M.D. Fla. May 14, 2020) (unpublished); *McGriff v. Sec'y, Dep't of Corr.*, No. 3:15-cv-1281-J-39-JBT, 2018 WL 354956, at *6 (M.D. Fla. Jan. 10, 2018) ("the fact that Petitioner committed his offenses within three years of being released from the FDOC is analogous to the fact of a prior conviction as it demonstrates recidivism") (unpublished). Petitioner is not entitled to relief on this ground.

**B.    Ground Two:  Trial Court Error in Allowing Prejudicial Evidence and Ground Three:  Trial Court Abused its Discretion in Denying Judgment of Acquittal**

In Grounds Two and Three, Petitioner asserts claims of trial court error.  As explained below, however, neither of these Grounds entitle Petitioner to relief because he failed to exhaust each as a federal claim in state court.

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition.   28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  Moreover, the exhaustion requirement is not satisfied unless the petitioner fairly presents his claim in each appropriate state court and alerts that court to the *federal* nature of the claim.  *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner can "indicate the federal basis for his claim" by citing the federal source of law in conjunction with the state law claim, citing a case deciding such a claim on federal grounds, or simply labeling the claim as "federal." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  Here, Petitioner did not exhaust these claims for relief because he did not raise them as federal claims.

1.    Ground Two: Trial Court Error for Admitting Evidence Petitioner Had Hepatitis

In Ground Two, Petitioner argues the state court violated the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution by allowing the prosecution to

present evidence that Petitioner had hepatitis when he spit blood and saliva on the officers. Doc. 8 at 10. Petitioner raised a similar issue in his direct appeal but failed to present the issue as based on federal law. Doc. 17-9 at 28-36. Instead, Petitioner argued the evidence was irrelevant and prejudicial and that the court failed to conduct the balancing test for such evidence required under Florida Statutes Section 90.403. Petitioner relied only on Florida state statutes and case law and did not mention a violation of federal law, cite federal case law, constitutional provisions or statutes, or even mention "fundamental fairness" anywhere in the initial brief. Petitioner thus failed to fairly present Ground Two as a federal claim in state court. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) ("[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (stating that, to have been "fairly presented" to the state courts, a claim must be brought in such a way "that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation") (quoting *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004)).

    2.    <u>Ground Three: Trial Court Error in Denying Judgment of Acquittal on Burglary Counts Because Petitioner Was Invited to the Apartment</u>

In Ground Three, Petitioner argues the state court violated the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution in denying his motion for

judgment of acquittal because the evidence was insufficient as a matter of law to establish burglary. Doc. 8 at 12-13. Petitioner raised a similar issue in his direct appeal but failed to present the issue as based on federal law. Doc. 17-9 at 36-44. Instead, he argued he had been invited to the apartment by Turknett and that Onkey's statement to "take a walk" was ambiguous as to whether the permission to be there had been withdrawn. *Id.* at 43. He argued this rendered the evidence insufficient to meet the elements of Florida Statute § 810.02(2)(a), the state's burglary statute.

Petitioner relied only on Florida state statutes and case law and did not mention a violation of federal law, cite federal case law, constitutional provisions or statutes in the initial brief. Specifically, he never mentioned the federal standard in gauging the legal sufficiency of the evidence on which a conviction is based, from *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). Petitioner thus failed to fairly present Ground Three as a federal claim in state court.

Petitioner, therefore, is not entitled to relief on either Grounds Two or Three.

## C. Ground Four: Trial Court Error in Burglary Jury Instructions and Verdict Form

In Ground Four, Petitioner argues his Fifth, Sixth, and Fourteenth Amendment rights were violated by the trial court's instruction to the jury on the burglary

charges. The jury instructions for Count I and II (Burglary with an assault or battery) contained Options 1 and 2. Option 1 had three elements: (1) defendant entered a structure owned by another; (2) with the intent to commit assault or battery; and (3) was not licensed or invited to enter. Doc. 17-2 at 27-28. Option 2 had two elements: (1) defendant had permission to enter the structure owned by another; and (2) remained after permission had been withdrawn with the intent to commit assault or battery inside the structure. *Id.* at 28. Petitioner argues Option 1 should not have been included because the evidence and the prosecution's argument supported the theory Petitioner was invited onto the property. Doc. 8 at 14-15. Also, he argues this error was exacerbated by the prosecution's closing, which focused on only Option 2, and the verdict form which did not require the jury to decide which Option they found. *Id.*

The Secretary argues this claim is unexhausted and procedurally defaulted because "the whole of his arguments on the merits of this claim rest exclusively on state law." Doc. 17 at 35. The undersigned disagrees. Petitioner specifically cited the federal sources for his claim and argued that the jury instruction deprived him of a fair trial. Doc. 17-9 at 51. While perhaps inartful, this is sufficient to provide fair notice to the state court that Petitioner wished to present Ground Four as a federal issue. Thus, this claim is exhausted.

The Secretary also argues Petitioner failed to preserve his objection to the jury instruction. Doc. 17 at 34-37. Again, the undersigned disagrees. During the charge

conference, defense counsel objected to including Option 1 in the instruction. Specifically, when the judge discussed the instruction for Counts I and II, defense counsel asked the judge whether Element 3 of Option 1, which was that defendant was not licensed or invited to enter the structure, stays. Doc. 17-5 at 13-14. Defense counsel then renewed his request for a judgment of acquittal on Option 1 "because the defendant has met his burden of production that he had an invitation to enter" and asked the judge to include only Option 2. Doc. 17-5 at 13-15. The judge, however, rejected the request, finding the issue of whether Defendant was invited to stay on the property was a question for the jury. *Id.* at 14. Only then did defense counsel switch to asking that all the elements of Option 1 be given. *Id.* at 15. Clearly, defense counsel preserved the issue for appeal and this colloquy is sufficient for the Court to construe the appellate court as having denied relief on the merits, rather than on a procedural default. *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) (holding that a presumption exists when a procedural default is raised on appeal that the state court denied relief based on that default unless it indicates otherwise); *see also Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 621 (11th Cir. 2019) (the *Bennett* presumption applies only if there is no evidence the state court considered the issue on the merits).

On the merits, however, Petitioner is not entitled to habeas relief because such relief is unavailable "for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67 (1991). Instead, "federal courts on habeas review are constrained to determine only

whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (quoting *McGuire*, 502 U.S. at 72 (internal quotes omitted)). Petitioner does not meet that standard here.

As previously discussed, even though there was evidence Petitioner was invited onto the property, the trial judge included Option 1 in the instructions because he did not find, as a matter of law, that the element had been proven. Doc. 17-5 at 14-15. The court's refusal to omit Option 1 "does not provide an independent basis for reversing an otherwise valid conviction." *See Griffin v. United States*, 502 U.S. 46, 60 (1991). Indeed, "a general verdict may be upheld where the jury is instructed on alternative theories of guilt, even if one but not all of the particular theories charged is factually inadequate; that is, there is insufficient evidence to support a conviction on one, but not every, ground charged." *Fuller v. Tucker*, No. 5:09CV344/RS/EMT, 2012 WL 407059, at *5 (N.D. Fla. Jan. 6, 2012), *report and recommendation adopted,* No. 5:09-CV-344-RS-EMT, 2012 WL 398955 (N.D. Fla. Feb. 8, 2012) (citing *Griffin v. United States,* 502 U.S. 46, 58–59 (1991) ("It was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's

action.")).  Petitioner is not entitled to federal habeas relief on Ground Four.

### D.    Ground Five: IATC for Failing to Request Lesser Included Instruction of Simple Battery and
### Ground Six:   IATC for Failing to Request Lesser Included Instruction of Trespass with a Battery

In Ground Five, Petitioner argues counsel should have requested an instruction for the lesser included offense of simple battery.  Doc. 8 at 19-20.  It is unclear, however, whether Petitioner intended to refer to "simple *burglary*," as was his argument in the state courts, or whether he is intending to raise a new argument here – that the lesser included offense of "simple *battery*" should have been included.

If it is the latter, Petitioner is not entitled to relief because he did not exhaust this claim in the state courts.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (If a petitioner fails "to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] ... there is a procedural default for purposes of federal habeas.").

Instead, what Petitioner argued in the state courts was that trial counsel should have requested an instruction on simple burglary – not battery.  Doc. 17-13 at 18.  In his appellate brief, Petitioner continued to focus on a simple *burglary* instruction – not battery.  He argued, "counsel provided ineffective assistance when he failed to request the necessary lesser-included offenses of simple Burglary under the Burglary Statute, Section 810.02," Doc. 17-15 at 25, and noted, "There was only one (1)

category one lesser-included offense available based on the charge, simple [b]urglary, and it was not given to the jury for consideration." *Id.* at 28. Thus, it is clear that Petitioner complained in state court only about the failure to include a simple burglary charge, not a simple battery charge. Because Petitioner failed to argue trial counsel was ineffective for failing to seek a simple battery charge before the state courts, this claim is unexhausted and now procedurally defaulted. *See Coleman,* 501 U.S. at 735.

To the extent Petitioner's reference to "simple battery" rather than "simple burglary" was a clerical error, that claim is exhausted, but like Ground Six is without merit. The state court's conclusion that Petitioner satisfied neither arm of *Strickland* for either Ground Five or Ground Six was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Specifically, the "possibility of a jury pardon, cannot form the basis for a finding of prejudice under *Strickland*." *Sanders v. State,* 946 So. 2d 953, 960 (Fla. 2006). In other words, even if the lesser included offenses had been included, that "does not suggest that there was a reasonable probability that the outcome would have been different" because the jury had sufficient evidence to find Petitioner guilty of the greater offense -- burglary with a battery. *See Magnotti v. Sec'y for Dep't of Corr.*, 222 F. App'x 934, 940 (11th Cir. 2007).

**E.    Ground Seven: IATC for Failing to Request Jury Instruction Supporting His Defense That the Porch Was Not Part of a Dwelling**

Petitioner argues counsel should have requested a jury instruction asking the jury to determine if the porch, pictured in 17-6 at 8-12 (trial exhibits), was part of a dwelling under Florida's burglary statute, § 810.02(1)(b). That statute provides that burglary means entering or remaining without permission in "a dwelling, a structure, or a conveyance" with the intent to commit an offense therein. Under § 810.011, "Dwelling" is defined as "a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." *Id.*

Petitioner exhausted this claim by raising it as Ground Three in his Rule 3.850 motion and raising it on appeal. The circuit court found Petitioner's argument to be meritless because the "'attached porch' in question was a concrete slab entirely covered by the balcony of the upstairs apartment, was supported by posts, and contained personal items." Doc. 17-13 at 53.

Petitioner is not entitled to habeas relief on this claim. The Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law ...." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Accordingly, "a state court's interpretation of state law ... binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted); *see Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("state law is what the state courts say it is"). Thus, this Court must defer to the state court's interpretation of state law.

*See Vega v. Sec'y, Dep't of Corr.*, 2021 WL 4439245, at *5 (11th Cir. Sept. 28, 2021) (quoting *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017)).

Here, the validity of Petitioner's claim of ineffective assistance of counsel turns on an issue of state law: Whether the porch of the victims' apartment was an "attached porch" within the definition of a "dwelling" as provided in Section 810.011(2), Florida Statutes.  In denying Petitioner's claim, the state circuit court found as a matter of Florida law that "this was a dwelling as contemplated by section 810.011(2), Florida Statutes, and was not open to the public."  Doc. 17-13 at 52. This Court will not revisit the issue of whether the porch was part of dwelling under Florida's burglary statute.

Since the porch is part of a dwelling under Florida law, counsel's performance cannot be deficient as any argument to the contrary would have been rejected.  *See Knowles v. Mirzayance*, 556 U.S. 111, 126-27 (2009) (the law does not require counsel to raise every available non-frivolous defense); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).  Therefore, Petitioner is not entitled to habeas relief on Ground Seven.

### F.    Ground Eight: IATC for Failing to Confer with Petitioner Regarding Lesser Offense Instructions

Petitioner argues in Ground Eight that counsel failed to consult with him about the lesser included trespass and battery instruction (*see* Ground Six).  *Id.* at 32.

Petitioner is not entitled to habeas relief.

After an evidentiary hearing, the Court determined based on testimony from Petitioner and trial counsel that trial counsel did, in fact, discuss these offenses with Petitioner and made a decision not to seek their inclusion. Petitioner has not rebutted with clear and convincing evidence the factual finding that counsel discussed this strategy with petitioner. *See* 28 U.S.C. § 2254(3) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). While Petitioner testified at the evidentiary hearing that he did not discuss the trespass theory with counsel, such testimony alone is not clear and convincing evidence, especially where the court found the testimony not credible and when juxtaposed against counsel's testimony that he did discuss the strategy with Petitioner. *See Franklin v. Dixon*, No. 4:21-CV-184-MW-MJF, 2022 WL 18587700 (N.D. Fla. Nov. 7, 2022), *report and recommendation adopted,* No. 4:21CV184-MW/MJF, 2023 WL 1781805 (N.D. Fla. Feb. 6, 2023) (citing 28 U.S.C. §§ 2254(d)(2), 2254(e); *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434, (1983)).

G. **Grounds Nine and Ten Relating to Alleged Trial Court Error in Applying the PRR Enhancement Statute**

Petitioner argues that, under Florida law, the PRR designation should not apply to him because burglary with assault or battery is not a forcible felony (Ground 9) or an enumerated offense (Ground 10).[6]  Like Ground Seven, Petitioner is not entitled to relief because these claims are premised solely on alleged errors by the state courts in applying state law.  Doc. 8 at 33-35.  As stated above, federal habeas relief is not available for "errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no question of a constitutional nature is involved.  *Pinkney*, 876 F.3d at 1299, *cert. denied,* 139 S. Ct. 193 (2018).  Petitioner is not entitled to habeas relief on Grounds Nine or Ten.

H. **Grounds Eleven, Twelve, and Thirteen:  Cumulative Error**

In Ground Eleven, Petitioner argues the "aforementioned grounds have prejudiced Mr. Callahan, denying him the provisional guarantees of fundamental rights as governed by both the State and U.S. Constitutional Amendments."  Doc. 8 at 36.  He then goes through each of Grounds One through Ten and simply lists the constitutional provision allegedly violated in each.  In Ground Twelve, Petitioner

---

[6] Fla. Stat. § 775.082(9)(a)1 defines a PRR as one who commits or attempts to commit, within 3 years of release, certain enumerated offenses including, at § 775.082(9)(a)1.o., the catchall for forcible felonies: "Any felony that involves the use or threat of physical force or violence against an individual."

argues that the trial court, sentencing court and the First DCA "abused their discretion in denying Mr. Callahan's Judgment of Acquittal at trial, 3.850 post-conviction motion, 3.800 illegal sentencing motions, direct appeal and the relief that Mr. Callahan has diligently been seeking from his meritorious claims of error." Doc. 8 at 27.  In Ground Thirteen, Petitioner argues that "[t]aken in whole, when coupled together, the aforementioned grounds contributed to the outcome of the instant case and cannot be considered harmless." Doc. 1 at 26.

To the extent Petitioner is attempting to argue the cumulative effect of the errors identified in the other grounds violated his constitutional rights, his attempt is without merit because he is not entitled to relief on any of the other grounds.  The "cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors." *Ballard v. McNeil*, 4:08cv347-SPM/EMT, 785 F. Supp. 2d 1299, 1336 (N.D. Fla. 2011) (citing *United States v. Barshov,* 733 F.2d 842, 852 (11th Cir.1984)) ("Without harmful errors, there can be no cumulative effect compelling reversal."); *Mullen v. Blackburn,* 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero.")).

## IV.  CONCLUSION

### A.  Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007).   Additionally, this Court must consider the deferential standards prescribed by § 2254.   *See id.*   Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See id.*

### B.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is

also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully RECOMMENDED:

1.    That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Callahan*, Leon County, Florida, Case Number 2014 CF 619, Doc. 1, be DENIED without an evidentiary hearing.

2.    That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 6th day of December, 2023.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.